74 F.3d 1250
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Buford Eugene SHOWN, Plaintiff-Appellant,
v.
Steve PEBWORTH, Case Manager of Mack Alford Correctional
Center, Defendant-Appellee.
 No. 95-7120.
 United States Court of Appeals, Tenth Circuit.
 Jan. 5, 1996.
 
 Before SEYMOUR, Chief Judge, McKAY and HENRY, Circuit Judges.
 ORDER AND JUDGMENT[1]
 McKAY, Circuit Judge.
 
 
 1
 The parties have agreed that this case may be submitted for decision on the briefs. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1.2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Buford Shown, a prisoner proceeding pro se and in forma pauperis, appeals the dismissal of his 42 U.S.C. 1983 action. Mr. Shown alleges several constitutional violations arising from actions taken against him by Defendant Steve Pebworth, a prison official. The district court dismissed all of Mr. Shown's claims as frivolous under 28 U.S.C.1915(d). For the reasons given below, we affirm.
 
 
 3
 Mr. Shown is currently in the custody of the Oklahoma Department of Corrections (DOC). He alleges that on April 6, 1994, Mr. Pebworth, a DOC case manager, came into his cell and asked him to remove his legal books and papers from a shelf on his wall. Mr. Shown apparently did not obey his command. Mr. Pebworth left and returned a few minutes later with DOC counselor Jim Farris. At this point, Mr. Shown alleges that Mr. Pebworth told him to get "the hell out of his way" and then threw his legal books into the hallway, tearing them in the process. Appellant Br. at 2. Mr. Pebworth, on the other hand, denies that he ever threw Mr. Shown's books. He claims that he went to Mr. Shown's cell with Mr. Farris and asked Mr. Shown to remove his books from the shelf. When Mr. Shown refused, Mr. Pebworth threatened to give Mr. Shown and his cellmate misconduct reports if they did not obey. At this point, Mr. Shown's cellmate removed the books.
 
 
 4
 Several months later, on August 13, 1994, Mr. Shown filed a grievance with the warden, complaining about Mr. Pebworth's behavior during the April incident. Mr. Shown also requested a transfer. Upon learning of the grievance complaint, Mr. Pebworth filed an "offense report" against Mr. Shown for "Individual Disruptive Behavior." R., Vol. II, at Attachment H. Mr. Pebworth filed the offense report to punish Mr. Shown for filing the grievance complaint against him. Mr. Pebworth asserted that Mr. Shown was making up accusations against him in order to manipulate the administration into giving Mr. Shown a transfer. Id.; R., Vol. II, at Attachment F (affidavit of Mr. Pebworth). Prison regulations classify as misconduct any action taken in order to coerce the administration. R., Vol. II, Attachment I at 23.
 
 
 5
 The warden reviewed Mr. Shown's grievance complaint and concluded that Mr. Pebworth had not thrown Mr. Shown's books and had not made any threatening remarks. Also, prison officials investigated the misconduct report and determined that a disciplinary hearing against Mr. Shown was warranted. Mr. Shown was found guilty at the disciplinary hearing. Both the warden and the director's designee reviewed this finding, and both concluded that Mr. Shown was indeed guilty of making up his accusations.
 
 
 6
 On appeal, Mr. Shown claims that his right of meaningful access to the courts was denied when Mr. Pebworth tore up his legal books and papers. He also claims that his First Amendment and due process rights were violated because Mr. Pebworth allegedly filed the misconduct report against him in retaliation for the grievance complaint. Lastly, Mr. Shown claims that his due process rights were violated when, contrary to prison regulations, Mr. Farris acted as investigator for the disciplinary officer even though he was a witness to the incident being investigated.[2]
 
 
 7
 Meaningful access to the courts includes access to legal books and materials. Bounds v. Smith, 430 U.S. 817, 828 (1977); Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir.1992). The record indicates, however, that Mr. Shown had adequate access to the prison's law library. He has not alleged that the books removed from his cell were in any way unique or otherwise unavailable to him. Even if we assume that Mr. Pebworth did indeed destroy Mr. Shown's legal materials, he has failed to assert any facts that would arguably indicate he has been denied meaningful access to the courts.
 
 
 8
 Mr. Shown's second claim is also without merit. Prison officials may not retaliate against a prisoner for exercising his First Amendment rights or for attempting to vindicate his right of meaningful access to the courts. This rule encompasses the filing of administrative grievances against prison officials. See Williams v. Meese, 926 F.2d 994, 998 (10th Cir.1991); Smith v. Maschner, 899 F.2d 940, 947 (10th Cir.1990). Additionally, prison officials may not act with an unconstitutional retaliatory motive, even if they could have taken the same action for a proper reason. Maschner, 899 F.2d at 948.
 
 
 9
 Here, the question whether Mr. Pebworth acted in retaliation reduces itself to the question whether Mr. Shown made up the accusations in his grievance complaint. The disciplinary officer, the prison warden, and the director's designee have all considered this question independently, and each concluded that Mr. Shown fabricated his accusations. In effect, we are asked to review the correctness of this determination. We review a prison administration's disciplinary decisions under a deferential standard. Due process merely requires that "some evidence" exist in the record which supports the decision made. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 455-56 (1985). We hold that some evidence existed which supports the disciplinary officer's decision. Both Mr. Pebworth and Mr. Farris, a witness to the event, gave affidavits stating that Mr. Pebworth had not torn up or thrown any of Mr. Shown's books. The record also indicates that Mr. Shown had attempted unsuccessfully to obtain a transfer. Thus, evidence existed from which the prison administration could conclude that Mr. Shown made false accusations in an attempt to get himself transferred.
 
 
 10
 Finally, we decline to review Mr. Shown's claim that Mr. Farris should not have acted as the investigator in his disciplinary proceedings. Mr. Shown raises this issue for the first time on appeal, and therefore, has waived review on this point.
 
 
 11
 AFFIRMED. The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of Tenth Circuit Rule 36.3
 
 
 [2]
 Mr. Shown has also filed with this court a "Motion for Partial Summary Judgment." Such motions are improper at the appellate level. 10th Cir. R.App. P. 27.2. Thus, we decline to review this motion